No. 24-_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

AVIVA KELLMAN ET AL.,

*Plaintiffs-Respondents,*

v.

SPOKEO INC.,

*Defendant-Petitioner.*

On Petition for Leave to Appeal from the United States District
Court for the Northern District of California, No. 21-cv-08976-WHO,
Judge William H. Orrick, Presiding

PETITION FOR LEAVE TO APPEAL A CLASS-
CERTIFICATION ORDER UNDER FED. R. CIV. P. 23(f)

Nicole A. Saharsky
Kevin S. Ranlett
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
*nsaharsky@mayerbrown.com*

John Nadolenco
Daniel D. Queen
Jennifer M. Chang
Max W. Hirsch
MAYER BROWN LLP
333 S. Grand Ave, 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
*jnadolenco@mayerbrown.com*

*Attorneys for Defendant-Petitioner Spokeo Inc.*

## RULE 26.1 DISCLOSURE STATEMENT

Spokeo Inc. has no parent corporation. No publicly held corporation owns more than 10% of Spokeo Inc.'s stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

QUESTIONS PRESENTED ................................................. 3

BACKGROUND .................................................................. 3

      A.    Spokeo's "Teaser Profiles" ................................... 3

      B.    Plaintiffs and Their Claims ................................. 4

      C.    The Class-Certification Order ............................ 6

ARGUMENT ...................................................................... 9

  I.    Review Is Warranted Because the Class-Certification Order Does Not Satisfy Rule 23's Commonality, Predominance, and Superiority Requirements ..................... 9

      A.    Using Affidavits to Establish the Core Basis for Liability Deprives Spokeo of Its Rights ..................... 10

      B.    The District Court's Ruling Does Not Identify Any Workable Means of Resolving Other Individualized Issues, Contrary to *Van* ..................... 17

  II.    Review Is Warranted Because Plaintiffs Lack Article III Standing ..................... 22

      A.    Plaintiffs Whose Teaser Profiles Have Not Been Viewed Have Not Shown an Article III Injury .......... 22

      B.    None of the Plaintiffs Has Demonstrated a Concrete Harm ..................... 26

CONCLUSION ..................................................... 28

STATEMENT OF RELATED CASES ................................. 29

CERTIFICATE OF COMPLIANCE ................................. 30

CERTIFICATE OF SERVICE ........................................... 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) .......................................................... 14, 21

*Bowerman v. Field Asset Servs., Inc.*,
60 F.4th 459 (9th Cir. 2023) ................................................................ 9

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ............................................................ 15

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) .................................... 28

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ................................................................ 1

*Charles v. City of L.A.*,
697 F.3d 1146 (9th Cir. 2012) ............................................................ 17

*Davis v. Electronic Arts Inc.*,
2018 WL 11436326 (N.D. Cal. Aug. 17, 2018) .................................. 12

*Fry v. Ancestry.com Operations Inc.*,
2023 WL 2631387 (N.D. Ind. March 24, 2023) ............................ 24, 25

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ................................................ 26

*Lara v. First Nat'l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022) ............................................................ 10

*Lindsey v. Normet*,
405 U.S. 56 (1972) .............................................................................. 13

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) .............................................................. 25

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) ............................................................ 21

ii

# TABLE OF AUTHORITIES

**Page(s)**

*In re Rhone-Poulenc Rorer Inc.,*
51 F.3d 1293 (7th Cir. 1995) ............................................................. 13

*Ridgeway v. Ancestry.com Operations,*
No. 7:23-cv-247 (N.D. Ala. July 25, 2023) .................................... 25, 27

*Ridgeway v. Spokeo, Inc.*
2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) ....................................... 23

*Rivera v. Invitation Homes, Inc.,*
2022 WL 504161 (N.D. Cal. Feb. 18, 2022) ....................................... 22

*In re SFPP Right-of-Way Claims,*
2017 WL 2378363 (C.D. Cal. May 23, 2017) ....................................... 15

*Thane Int'l, Inc. v. Hartford Fire Ins. Co.,*
2008 WL 11335049 (C.D. Cal. Mar. 15, 2008) .................................... 26

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ...................................................... *passim*

*Tyson Foods v. Bouaphakeo,*
577 U.S. 442 (2016) ............................................................ 14

*Valenzuela v. Union Pac. R.R. Co.,*
2017 WL 679095 (D. Ariz. Feb. 21, 2017) ........................................ 16

*Van v. LLR, Inc.,*
61 F.4th 1053 (9th Cir. 2023) ............................................. *passim*

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ............................................................. 9

*Wit v. United Behavioral Health,*
79 F.4th 1068 (9th Cir. 2023) ................................................... 14

## Statutes and Rules

28 U.S.C. § 2072 ............................................................... 14

iii

## TABLE OF AUTHORITIES

**Page(s)**

Cal. Civ. Code § 3344 ........................................................... 4, 17

Ohio Rev. Code ch. 2741 ........................................................ 4

Ohio Rev. Code § 2741.02(D)(1) ............................................ 17

Fed. R. Civ. Proc. 23 ..................................................... *passim*

**Other Authorities**

Western Alliance Bank, *2024 Annual Report: Digital
   Payments in Class Actions and Mass Torts* (2024) ........................... 16

iv

## INTRODUCTION

Plaintiffs allege that they have been harmed because their names appeared in "teaser profiles" on Spokeo.com, a people-search website. The district court certified two classes each for California and Ohio—a class of individuals who seek injunctive relief because their teaser profiles could be viewed on Spokeo.com, and a class of individuals who seek damages because someone viewed their teaser profiles and then made a purchase on Spokeo.com.

This Court should review the class-certification order because there are two issues on which "the district court's . . . decision is manifestly erroneous" and which "present[] an unsettled and fundamental issue of law relating to class actions." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Indeed, these two issues have divided lower courts, necessitating this Court's intervention.

First, the classes certified here do not meet Rule 23's commonality, predominance, and superiority requirements because of many individualized issues that must be resolved to determine liability and class membership. The district court erred in looking past those issues at the class-certification stage and instead suggesting that they could be

addressed through post-liability affidavits. That approach violates the Due Process Clause and the Seventh Amendment, because it deprives Spokeo of its right to put on individualized evidence or (when affidavits are used) to fully contest Plaintiffs' evidence through discovery and cross-examination in front of a jury. It also contravenes the Rules Enabling Act, which precludes a district court from relying on Rule 23 to curtail these rights. And it conflicts with several of this Court's prior decisions, including *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023), and deepens a split in lower-court authority.

Second, none of the named Plaintiffs has standing. Recognizing a split in this Circuit and beyond, the district court held that a plaintiff can bring a right-of-publicity claim even if his or her information is never viewed by anyone. That is an extraordinary holding that eviscerates Article III's injury-in-fact requirement. The court also failed to recognize that even if a teaser profile were viewed, that alone would not establish a cognizable injury under Article III.

This Court should grant review to correct the district court's erroneous rulings, resolve the identified splits in authority, and bring uniformity to the legal standards governing class actions.

## QUESTIONS PRESENTED

1.     Whether   Plaintiffs   satisfy   Rule   23's   predominance, commonality, and superiority requirements when their claims raise individualized merits issues not susceptible to common proof, and the only proposed means of adjudicating those issues is using individual class member affidavits in a post-trial claims process.

2.     Whether Plaintiffs establish Article III standing to assert right-of-publicity claims when there is no evidence that anyone ever viewed their teaser profiles and/or their purported harm is not the kind of harm traditionally recognized as providing a basis for a right-of-publicity claim.

## BACKGROUND

### A.     Spokeo's "Teaser Profiles"

Spokeo operates a people-search website, Spokeo.com, that allows users to search for information aggregated from various public sources.[1] Dkt. 137 ¶ 3. Spokeo uses algorithms to predict which data from these sources is related, then groups that data within its database. Dkt. 137 ¶ 3. When non-Spokeo users search for a name on the Spokeo.com

---

[1]      "Dkt." is the district court docket, 3:21-cv-08976 (N.D. Cal.).

website, they may be shown what Plaintiffs call "teaser profiles"—webpages that include a name and other partially-blurred information associated with that name in Spokeo's database. Dkt. 137 ¶ 4.

Because teaser profiles are algorithmically generated and based on incomplete and imperfect data, not every teaser profile corresponds to a real person or has correct information. Dkt. 139 ¶¶ 40-67. Indeed, Spokeo has more than 630 million teaser profiles, even though there are only 260 million U.S. adults. Dkt. 137 ¶ 15.

## B.    Plaintiffs and Their Claims

The crux of Plaintiffs' claims is that Spokeo supposedly misappropriated their names by using their names in teaser profiles without their consent. Dkt. 123 ¶ 17. According to Plaintiffs, "the unredacted information visible on [their] teaser profile[s] uniquely identifies [them]," and Spokeo uses those "unique[]" identities to advertise its subscription services. Dkt. 123 ¶¶ 28, 32, 36, 40, 45, 50, 55, 61, 64, 77, 80, 93, 96, 109, 112, 135, 138, 141, 144, 157. Plaintiffs bring claims for violations of the right-of-publicity statutes of California, Cal. Civil Code § 3344, and Ohio, Ohio Rev. Code ch. 2741, as well as related state-law claims. Dkt. 123 ¶¶ 180-92, 205-22.

The original complaint had three named Plaintiffs. Dkt. 1. There was no evidence that anyone other than those Plaintiffs (or their counsel) ever viewed those Plaintiffs' teaser profiles. Dkt. 137 ¶ 7. Amended complaints added four more Plaintiffs; those Plaintiffs alleged that people viewed their teaser profiles and then bought Spokeo subscriptions. *E.g.*, Dkt. 112 ¶¶ 102-49; Dkt. 123 ¶¶ 139-54.

Spokeo sought discovery into whether any of the Plaintiffs were registered Spokeo users because if they were, their claims would be subject to arbitration (as specified in Spokeo's terms of use) and they would be excluded from Plaintiffs' putative classes. Dkt. 137 ¶ 35. Spokeo's records could not resolve the issue because Spokeo does not have comprehensive user information, users' names and contact information often change after purchase, and users may sign up for services on others' behalf. *Id.* ¶¶ 27-34.

Each Plaintiff submitted a declaration attesting that he or she was not a Spokeo user and had not visited Spokeo.com. Dkt. 101-03. After extensive discovery (written discovery to and depositions of each Plaintiff, plus third-party discovery), it became clear that several of those declarations were inaccurate—and that two Plaintiffs were, in fact,

Spokeo registered users. *See* Dkt. 138 ¶¶ 10-22, 24-28. Following these revelations, Plaintiffs voluntarily dismissed those Plaintiffs to pursue individual arbitrations. Dkt. No. 121.

Also in discovery, Spokeo learned that the teaser profile that supposedly misappropriated Plaintiff William Williams' identity did not use his actual name—even though that is an essential element of his right-of-publicity claims. Indeed, relying on this teaser profile, Plaintiffs' counsel originally contacted and were retained by *the wrong person*, who submitted a sworn declaration and discovery responses, then told Spokeo in his deposition: "That is not me." Dkt. 138-19 at 77:3-13. Plaintiffs' counsel then contacted and were retained by the original deponent's *son*, who confirmed that the alleged teaser profile did not use his actual name, either (it used an inaccurate name, "William O V Williams III," that he once provided on an IRS form). Dkt. 138-21 at 68:21-74:18;121:21-122:3.

## C.   The Class-Certification Order

The district court certified two classes each of Ohio and California residents:

- Injunctive-relief classes under Rule 23(b)(2) of California and Ohio residents "whose teaser profile is searchable on www.spokeo.com"; and

- Damages and injunctive-relief classes under Rules 23(b)(3) and 23(b)(2) of California and Ohio residents "whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription."

A8. The district court limited each class to people who were not registered Spokeo users and whose teaser profiles included their own name and home address. A8, A17.

In certifying the classes, the district court rejected Spokeo's arguments that the Plaintiffs lack Article III standing. The court held that Plaintiffs have standing even if nobody ever viewed their teaser profiles, because "the injuries that the plaintiffs asserted [are] based on the publication of their information—not the viewing of their information." A8-10. The court acknowledged that three district courts had reached the opposite conclusion, but deemed those other decisions "unpersuas[ive]." A9-10. The court also acknowledged a dispute about whether Plaintiff Williams had standing (because his alleged teaser profile did not use his actual name), but decided that it could be resolved on summary judgment. A10.

Spokeo argued that Rule 23's commonality, predominance, and superiority requirements were not satisfied because individualized inquiries would be required to figure out (for example) which class

members actually have a teaser profile, which class members are subject to arbitration, and which class members are subject to certain defenses. Dkt. 134 at 14-26. The district court rejected that argument, reasoning that common liability could be established because individuals would not be members of the class unless their "name and address was published," and it could determine those facts using affidavits after determining liability. A15-16.

The district court likewise acknowledged that arbitrability of claims "may ultimately be an individualized inquiry," but suggested that this issue "could be addressed through common evidence if, for example, Spokeo has a list of known users or individuals who have agreed to arbitration." A15-16, A18. No such list exists, and discovery showed that determining who is a Spokeo registered user is not an easy task (indeed, two named Plaintiffs dismissed their claims after extensive discovery revealed that they are registered users). Dkt. 121; Dkt. 138 ¶¶ 11-22.

Similarly, the district court acknowledged that a potential First Amendment or public-figure defense would be an individualized inquiry, but decided that "there are many central issues that are common to the class" and "[i]t is clear that they predominate over this single affirmative

defense, particularly without evidence of how much of the class might be subject to the defense." A19. The court reached this conclusion even though one of the named Plaintiffs indisputably is a public official (an elected school board member) who conceded that there is a public interest in some of his information on Spokeo.com, Dkt. 138-10 at 46:10-47:17, 48:13-49:12, 59:2-14, and all classes (especially the California classes) no doubt include other public figures.

## ARGUMENT

### I. Review Is Warranted Because the Class-Certification Order Does Not Satisfy Rule 23's Commonality, Predominance, and Superiority Requirements

To satisfy Rule 23(a)(2)'s commonality requirement, the asserted claims "must depend upon a common contention," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Likewise, "[u]nder the predominance requirement of Rule 23(b)(3), a district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members' before certifying a class." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 468 (9th Cir. 2023) (citation omitted).

9

If an "individualized issue" exists, the court must determine "whether a class-member-by-class-member assessment of the individualized issue will be . . . workable." *Van*, 61 F.4th at 1069. And if a class action "would involve adjudicating issues specific to each class member's claim, and that would be unmanageable," the superiority requirement of Rule 23(b)(3) is not satisfied either. *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1140 (9th Cir. 2022).

Here, Spokeo established that multiple key issues must be determined individually for each class member. The district court seriously erred by concluding that these issues could be resolved on a classwide basis.

## A. Using Affidavits to Establish the Core Basis for Liability Deprives Spokeo of Its Rights

Plaintiffs' claims turn on whether Spokeo's teaser profiles misappropriate their names. A1, A8; Dkt. 134 at 15-18. Because multiple teaser profiles may use the same name (and many people share the same names), and because the law that applies to each person's claim depends on his or her state of residence, the class definitions and plaintiffs' theories of liability both require that each class member's teaser profile contain that class member's home address. A8, A17.

Discovery established that the names and addresses in teaser profiles often are inaccurate, and that checking them requires individualized proof. For instance, it took extensive written discovery and two depositions for Spokeo to determine that the teaser profile for Plaintiff Williams (one of two named damages Plaintiffs) did not use his actual name or current home address. Dkt. 138 ¶¶ 24-28.

Further, Spokeo's expert, David Alfaro, identified dozens of teaser profiles that Plaintiffs' expert had included in his count of the class members but that used obviously inaccurate names (like "Donald Duck" or "Po Box"). Dkt. 139 ¶¶ 27, 88-92. Alfaro also explained why Spokeo.com teaser profiles often have inaccurate, out-of-date, and/or non-home addresses. *Id*. ¶¶ 93-107. And the fact that there are hundreds of millions more teaser profiles than U.S. adults (Dkt. 137 ¶ 15) confirms the impossibility of mechanically matching class members to profiles.

Thus, to test both whether an individual is a class member and whether the person can assert a claim, the parties will need to investigate, through discovery, the names and home addresses of each of the tens of thousands of putative class members.

The inevitability of these sorts of individualized inquiries is precisely why another judge in the same district denied class certification of similar right-of-publicity claims in *Davis v. Electronic Arts Inc.*, 2018 WL 11436326, at \*4 (N.D. Cal. Aug. 17, 2018) (Seeborg, J.). In *Davis*, NFL players alleged their identities were being appropriated by video game avatars. *Id.* That court denied class certification because "each and every avatar alleged to represent a particular player will have to be examined to determine if it is an appropriation of *that specific player's* identity." *Id.* at \*3. The same is true here—each and every teaser profile alleged to match a person claiming to be a class member must be examined individually.

To try to circumvent these mini-trials—and avoid a conflict with *Davis*—the district court announced that it would invite California and Ohio residents to submit post-liability affidavits to confirm that teaser profiles used their actual names and residential addresses. A16.

The experience in this case demonstrates that this approach will not work. Plaintiffs, under the supervision of counsel, repeatedly filed sworn declarations that were proven false. For example, two Plaintiffs swore that they were not registered users of Spokeo.com, when in fact

they were. *See* Dkt. 138 ¶¶ 10-22, 24-28. Similarly, although Plaintiff Williams' sworn declaration claimed that a teaser profile used his name, the district court found a factual dispute on that point that would need to be determined "at summary judgment or at trial." A10. That same fact-intensive inquiry could be necessary for the tens of thousands of members of the putative damages classes—meaning that extensive discovery, summary judgment, and trial would be needed for each of them. Because these core questions of liability require a class-member-by-class member analysis, Rule 23's requirements are not met.

Further, using these affidavits to assess claims after making a liability determination would violate Spokeo's rights. Spokeo has the right to adduce material, class-member-specific evidence about identity and arbitrability in order to put on a defense. As the Supreme Court has explained, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted). And Spokeo has a Seventh Amendment right to have the case (including its individualized defenses) decided by a jury. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). The Rules Enabling Act confirms that Rule 23's class action procedure cannot be

13

used to "abridge, enlarge, or modify any substantive right," 28 U.S.C. § 2072, meaning that courts may not "giv[e] plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action," *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 458 (2016).

Applying that settled law, this Court recently held that a district court violated the Rules Enabling Act when it certified a class containing individuals who could not have made the "showing" of wrongful conduct necessary for their claim to proceed in individual litigation, because doing so "enlarged or modified Plaintiffs' substantive rights[.]" *Wit v. United Behavioral Health*, 79 F.4th 1068, 1086 (9th Cir. 2023). The First Circuit similarly has held that the Due Process Clause, the Seventh Amendment, and the Rules Enabling Act protect a defendant's right to bring any "challenge to a plaintiff's ability to prove an element of liability" for each class member. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 47, 53 (1st Cir. 2018).

These decisions confirm that in a class action, defendants must be able to raise the same arguments against liability that they could present in an individual case. The post-trial affidavit procedure proposed here would prevent Spokeo from doing so.

14

As authority for using its procedure, the district court primarily relied on *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). That reliance is misplaced. In *Briseno*, the individualized issues concerned allocation of an easily calculable amount of aggregate damages among class members, where each class member would only receive *a de minimis* amount. *Id.* at 1132 (damages were price premium multiplied by the total number of units sold, which was known by the defendant). Here, the individualized issues are foundational to liability. And the aggregate damages are unknowable; they depend on the number of class members who submit affidavits to prove liability and entitlement to statutory damages, which would award $750 or $2,500 *per class member*.

As district courts across this Circuit have recognized, *Briseno* does not permit the delegation of "threshold liability concern[s] that require[] a legal determination" by the court to "claims administrators." *In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017). As one court put it in rejecting a similar proposal to use post-trial affidavits, "when individual issues will predominate on the threshold question of liability," courts cannot "avoid th[e] [predominance] requirement, or find it satisfied, merely by *assuming* that individual

issues can be dealt with" by "relegat[ing]" them to "claims administrators." *Valenzuela v. Union Pac. R.R. Co.*, 2017 WL 679095, at *17 (D. Ariz. Feb. 21, 2017). The order below in this case is in direct conflict with these decisions.

This division among district courts in this Circuit about when class member affidavits can be used to shear away individualized issues in order to manufacture commonality, predominance, and superiority confirms the need for this Court's immediate review. Further, in the last three years, the rate of inaccurate submissions of class member affidavits in recent class settlements has exploded. A study of 597 class and mass-tort settlements in the last five years found that more than 80 million fraudulent claims were submitted—an increase of over 19,000 percent since 2021.[2] For that reason as well, review is warranted now.

---

[2]     *See* Western Alliance Bank, *2024 Annual Report: Digital Payments in Class Actions and Mass Torts* 3-5 (2024), at https://www.westernalliancebancorporation.com/industry-expertise/legal/2024-digital-payments-report.

**B.    The District Court's Ruling Does Not Identify Any Workable Means of Resolving Other Individualized Issues, Contrary to *Van***

Even if post-trial affidavits were a permissible method of excising individualized questions regarding whether teaser profiles correspond to class members, the court failed to account for other critical individualized issues.

For instance, the relevant class definitions exclude registered Spokeo.com users, whose claims would be subject to arbitration. A8, A19. Spokeo proved through discovery that two of the four named damages Plaintiffs fall into this category. Dkt. 138 ¶¶ 11-22. Likewise, Spokeo established that one of the original Plaintiffs was a public official whose claims would be subject to a statutory or First Amendment defense. Dkt. 138-10 at 46:10-47:17, 48:13-49:12, 59:2-14; *see also* Cal. Civ. Code § 3344(d) (providing "news" and "public affairs" defenses); Ohio Rev. Code § 2741.02(D)(1) (similar); *Charles v. City of L.A.*, 697 F.3d 1146, 1153-54 (9th Cir. 2012) ("The First Amendment extends to the sale of truthful information about a public figure, and thus renders such conduct non-actionable under a right to publicity theory.").

The district court's certification order did not address how these individualized issues could be resolved without either running afoul of Rule 23's predominance requirement or depriving Spokeo of its due process right to present those defenses. In particular, the court simply held that it was "possible" that the arbitration question could be resolved "*if*" Spokeo had "a list of known users or individuals who have agreed to arbitration." A18 (emphasis added). In proposing that hypothetical solution, the court ignored undisputed evidence that Spokeo does *not* have a comprehensive list of names and other contact information for Spokeo.com registered users that could be used to match registered users to teaser profiles. That is why it took months of discovery to determine that certain named Plaintiffs actually were registered Spokeo users. Dkt. 138 ¶¶ 10-23.

Similarly, the district court acknowledged that some class members "may be public figures subject to the First Amendment newsworthiness exception." A19. But the court discounted this individualized issue for lack of "evidence of how much of the class might be subject to the defense." *Id*. Particularly with California classes at issue in this case,

there is every reason to believe that a significant portion of the classes could be public figures.

The district court's analysis is inconsistent with this Court's recent decision in *Van*, which vacated a class-certification order where the district court similarly disregarded the individualized issues in the case. 61 F.4th at 1069. In *Van*, the defendant presented evidence that "a small number" (about one-tenth of one percent) of over 13,000 transactions at issue were not actionable. *Id.* at 1068-69. The district court certified the class, deeming the defendant's proffer insufficient to establish that the defense applied to enough class members. *Id.* at 1067-69, 1068 n.13.

This Court vacated, explaining that focusing on the frequency with which the issue would prove dispositive "rests on a misunderstanding of the Rule 23 inquiry." *Id.* at 1068. The point is not frequency, but whether the inquiry is individualized. The defendant had shown that "an inquiry into the circumstances and motivations behind each of the" 13,000-plus transactions "might be necessary," would could involve individual "depositions and months of trial." *Id.* at 1069.

Thus, it was the plaintiff's burden to show that "questions of law or fact common to class members predominate over any questions affecting

only individual members," *i.e.*, that "a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Id.* The Court remanded for the district court to determine if the plaintiffs could make that showing. *Id.*

*Van* is on all fours with this case and precludes class certification. Just like in *Van*, Spokeo has proven that it has individualized defenses to some putative class members' claims—including whether their claims are subject to arbitration or barred by the statutory newsworthiness or First Amendment defenses. There is every reason to believe that these individualized defenses recur often. Indeed, discovery revealed that two of the seven (28%) named Plaintiffs were registered users subject to arbitration, and at least one of the seven named Plaintiffs (14%) is a public figure subject to a First Amendment or statutory defense— yielding far higher percentages of affected class members than were sufficient to vacate class certification in *Van*.

But even if only a "small number" (*Van*, 61 F.4th at 1069) of class members had those issues, the burden was on the plaintiffs to show how affected class members with meritless claims could be winnowed out without individualized inquiries. They failed to do so.

20

Although the district court speculated that Spokeo might have a comprehensive list of individuals with arbitration agreements, the undisputed evidence confirmed that no such list existed—necessitating extensive inquiries into each named Plaintiff's status as a registered user. Dkt. 138 ¶¶ 10-23. And the district court had no plan at all for resolving public-figure defenses without individualized inquiries. Under *Van*, when individualized inquiries "might be necessary," the district court cannot certify the class unless there is a "workable" plan for avoiding them (61 F.4th at 1069).[3] Wishing individualized defenses away is not a workable plan.

At bottom, the district court's ruling ignores that key questions in this case are inherently individualized and fails to offer any workable means of evaluating those questions with common evidence. The district court's ruling thus squarely contradicts *Van*.

---

[3] *See also, e.g., Asacol*, 907 F.3d at 58 (certification requires "reasonable and workable plan" for protecting defendant's constitutional rights without "caus[ing] individual inquiries to overwhelm common issues"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019) ("winnowing mechanism" used to exclude class members who do not have viable claims must be "truncated enough to ensure that the common issues predominate, yet robust enough to preserve the defendants' Seventh Amendment and due process rights to contest every element[.]").

## II. Review Is Warranted Because Plaintiffs Lack Article III Standing

Article III "[s]tanding 'is a jurisdictional element that must be satisfied prior to class certification.'" *Rivera v. Invitation Homes, Inc.*, 2022 WL 504161, at *4 (N.D. Cal. Feb. 18, 2022) (quoting *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997)). "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'" *Id.* at *4 (quoting *Nelsen v. King Cnty.*, 895 F.2d 1248, 1250 (9th Cir. 1990)).

Here, Spokeo argued that Plaintiffs lacked Article III standing, but the Court rejected those arguments—furthering a split among courts about how to apply the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

### A. Plaintiffs Whose Teaser Profiles Have Not Been Viewed Have Not Shown an Article III Injury

The three original Plaintiffs in this case—including class representatives Kellman and Newell—lack standing because there is no evidence that anybody (other than Plaintiffs and their counsel) ever searched for and viewed their alleged teaser profiles. Dkt. 137 ¶ 7.

22

Without that evidence, these Plaintiffs cannot possibly show that they have suffered a cognizable injury.

*TransUnion* makes that clear. In *TransUnion*, the plaintiffs sued a credit reporting agency for failing to maintain accurate credit files for the putative class members, then sought to certify a class of individuals whose inaccurate information was not actually provided to any potential creditors. 594 U.S. at 417. The Court held that this class of individuals had not suffered an injury to support a damages award:

> The mere presence of an inaccuracy in an internal credit file, *if it is not disclosed to a third party*, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is. So too here.

*Id.* at 434 (emphasis added).

As the district court acknowledged (A9-10), in similar right-of-publicity cases, other courts (relying on *TransUnion*) have concluded that someone must have viewed the particular advertisement purportedly using the plaintiff's identity for the plaintiff to have Article III standing.

In particular, in *Ridgeway v. Spokeo, Inc.*, a judge in the Central District of California held that a plaintiff did not have standing to assert

a right-of-publicity claim against Spokeo unless someone had actually searched for, and viewed, that plaintiff's teaser profile. 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023). The court found that, absent such a search and viewing, such a "[plaintiff's] purported harm is akin to that of the plaintiffs in *TransUnion* for whom standing was found wanting." *Id.* at *5.

Another case applying this limitation on standing—and involving one of the Plaintiffs here (Jason Fry)—is *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387, at *5 (N.D. Ind. March 24, 2023). In that case, Fry asserted right-of-publicity claims under Indiana law against another website operator for allegedly using a preview advertisement system if visitors were to search for Fry's name. *Id.* at *1-2. The court held that, under *TransUnion*, Fry would not have standing unless some "third party" other than the plaintiff's attorneys "saw the advertisement at some point."

Similarly, in *Verde v. Confi-Chek, Inc.*, another federal district court dismissed an analogous right-of-publicity claim for lack of standing under *TransUnion* because the plaintiff did not allege that "any third party ever searched her name or viewed her 'free preview' on defendant's

website." 2021 WL 4264674, at *4 (N.D. Ill. Sept. 20, 2021).

The reasoning of these cases applies in equal force here, where three of the five Plaintiffs have not established that anyone (other than themselves and their own attorneys) viewed a teaser profile using their identities. Thus, their unviewed teaser profiles here are the legal equivalent of "a defamatory letter . . . stored in [a] desk drawer." *TransUnion*, 594 U.S. at 434. And Plaintiffs have not been "independently harmed by their exposure to the . . . mere risk" that some third party may view their teaser profiles. *Id.* at 437. "[S]peculation or 'subjective apprehension' about future harm" does not "support standing." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

The district court conceded that *Ridgeway*, *Fry*, and *Verde* all "found no standing for similar allegations," but dismissed those decisions as "unpersuasive." A9. Likewise, rejecting the analogy to *TransUnion*, the district court responded that in its view, Spokeo "took the letter out of the drawer and tacked it to a public bulletin board. *Id*. But that metaphor fails because there is no evidence that these three Plaintiffs' teaser profiles ever were visible to anyone on the Spokeo website. In light of conflict with *TransUnion* and other district court decisions, this Court

25

should grant review.

## B.    None of the Plaintiffs Has Demonstrated a Concrete Harm

In any event, all Plaintiffs lack Article III standing because they have not alleged the requisite concrete harm for right-of-publicity claims. The district court here found that Article III standing was present and sufficient to support class certification. *Id.*; *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022). That was wrong.

The *TransUnion* Court held that an alleged "concrete harm" is sufficient to confer standing only if the harm "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." 594 U.S. at 440. Yet the common law precursor to right-of-publicity claims vindicates only financial harms to proprietary interests. *See, e.g.*, *Thane Int'l, Inc. v. Hartford Fire Ins. Co.*, 2008 WL 11335049, at *6-7 (C.D. Cal. Mar. 15, 2008) (explaining common law history and noting that "[a] violation of the right of publicity causes injury in the nature of a loss of 'commercially exploitable opportunities' in the plaintiff's name and likeness") (citation omitted).

Here, the sole harm that Plaintiffs have identified are their vague concerns that strangers hypothetically might access their information

and perhaps misuse it, *e.g.*, Dkt. 138-13 at 145:25-146:4; Dkt. 138-12 at 143:1-13; offense from Spokeo's purported use of their names in teaser profiles without permission, *e.g.*, Dkt. 138-13 at 158:23-159:7; or the purported unjust enrichment to Spokeo, *e.g.*, Dkt. 138-9 at 155:6-18. These are not the types of harms that American courts traditionally recognized as a basis for a suit, much less a right-of-publicity claim.

Plaintiffs here do not allege that Spokeo deprived them of any economic opportunity by purportedly using their identities in teaser profiles. Nor can Plaintiffs make any such assertion, as Plaintiffs are not celebrities or other prominent figures who could monetize the use of their names or other identities. And, in any event, the data on Spokeo's teaser profiles already was publicly available.

Plaintiffs thus lack Article III standing, even if those harms would be sufficient to state a claim under the invoked right-of-publicity law. *E.g.*, Order at 15, *Ridgeway v. Ancestry.com Operations*, No. 7:23-cv-247 (N.D. Ala. July 25, 2023) ECF No. 37 (no Article III standing for right-of-publicity claims, as "[a] cause of action that was recognized for the first time in the 1950s and is only available in sixteen states" as of 1998 "cannot be considered traditionally recognized as providing a basis for a

27

lawsuit" and does not vindicate "a traditionally recognized harm"); *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at \*4-5 (N.D. Cal. June 15, 2021) ("mental anguish from . . . use of likenesses to promote a product" does not establish standing without economic harm).

Because the district court's permissive view of standing is contrary to *TransUnion*, this Court should grant review to address the standing issue as well.

## CONCLUSION

The petition for leave to appeal should be granted.

June 12, 2024                                    Respectfully submitted,

                                                  /s/ John Nadolenco

Nicole A. Saharsky                    John Nadolenco
Kevin S. Ranlett                          Daniel D. Queen
MAYER BROWN LLP                 Jennifer M. Chang
1999 K Street, NW                       Max W. Hirsch
Washington, DC 20006              MAYER BROWN LLP
Telephone: (202) 263-3000       333 S. Grand Ave,
Facsimile: (202) 263-3300        47th Floor
nsaharsky@mayerbrown.com     Los Angeles, CA 90071
                                                  Telephone: (213) 229-9500
                                                  Facsimile: (213) 625-0248
                                                  jnadolenco@mayerbrown.com

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned counsel states

that they are unaware of any other pending case.

Dated: June 12, 2024 /s/ John Nadolenco
John Nadolenco
*Attorney for Defendant-Petitioner*
*Spokeo, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), undersigned counsel certifies that this Petition:

(i)     complies with the type-volume limitation of Circuit Rules 5-2(b) and 32-3 because it is less than 20 pages, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 5(c) and Circuit Rule 32-1(d), as determined by dividing the Petition's word count of 5,207 by 280 (18.6); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: June 12, 2024          /s/ John Nadolenco
                              John Nadolenco
                              *Attorney for Defendant-Petitioner*
                              *Spokeo Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, I filed the foregoing Petition via the Appellate Electronic Filing system. In addition, pursuant to Federal Rule of Appellate Procedure 25(c), I hereby certify that the foregoing Petition is being sent by overnight delivery service and email to the following.

Michael F. Ram
mram@forthepeople.com
Marie N. Appel
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite
500 San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Sam Strauss
sam@straussborrelli.com
Raina Borelli
raina@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109


Dated: June 12, 2024

/s/ John Nadolenco
John Nadolenco
*Attorney for Defendant-Petitioner*
*Spokeo Inc.*

31